STATE OF NORTH CAROLINA v. JAMES MACKEL SPENCER

No. 27

(Filed 12 April 1972)

**1. Constitutional Law § 30— speedy trial**

The constitutional right to a speedy trial protects an accused from extended imprisonment before trial, from public suspicion generated by an untried accusation, and from loss of witnesses and other means of proving his innocence resulting from passage of time.

**2. Constitutional Law § 30— speedy trial — circumstances of each case**

Whether defendant has been denied the right to a speedy trial is a matter to be determined by the trial judge in the light of the circumstances of each case.

**3. Constitutional Law § 30— speedy trial — burden of proof**

The accused has the burden of showing that the delay was due to the State's wilfulness or neglect.

**4. Constitutional Law § 30— speedy trial — unavoidable delay — delay requested by defendant**

Unavoidable delays and delays caused or requested by defendant do not violate his right to a speedy trial.

**5. Constitutional Law § 30— speedy trial — waiver**

A defendant may waive his right to a speedy trial by failing to demand or to make some effort to obtain a speedier trial.

**6. Constitutional Law § 30— speedy trial — ten months between arrest and trial**

Defendant was not denied his constitutional right to a speedy trial by a delay of ten months between his arrest and trial on charges of possessing and growing marijuana where defendant, who was represented by counsel, failed to demand a speedy trial, failed to appear when the case was called for trial on one occasion, and acquiesced in a continuance on another occasion, and defendant failed to show that the delay resulted in any prolonged imprisonment, created public suspicion against him or deprived him of any means of proving his innocence; there is no merit in defendant's contention that he was prejudiced by the delay because of widespread publicity resulting from drug investigations in the county during the delay and the trial of three other drug cases at the same session at which he was tried.

**7. Searches and Seizures § 3— affidavit for search warrant — sufficiency**

An affidavit for a search warrant complied with G.S. 15-26(b) and met the constitutional standard of reasonableness and probable cause, where the affiant stated that he had received information from a reliable informant that defendant had marijuana in his residence and was growing marijuana approximately 75 yards from his residence, that the informant was credible because he had given information

in the past which led to arrests and convictions, that affiant confirmed the information as to growing marijuana by personal observation, and that affiant, by personal surveillance, observed large amounts of traffic to and from defendant's residence.

**8. Searches and Seizures § 3— search warrant — affidavit — information from prior warrantless search — lands not within curtilage**

There is no merit in defendant's contention that a search warrant was invalid on the ground that the affidavit for the warrant revealed that the affiant had illegally searched a cornfield in which marijuana was growing some 75 yards behind defendant's residence prior to issuance of the warrant, since the constitutional guaranties against unreasonable search and seizure do not apply to open fields or other lands not an immediate part of the dwelling site.

**9. Narcotics § 4— constructive possession**

Constructive possession of marijuana is that which exists without actual personal dominion over the material, but with an intent and capability to maintain control and dominion over it.

**10. Criminal Law § 106— motion for nonsuit or directed verdict — circumstantial evidence**

When a motion for nonsuit or motion for directed verdict questions the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances.

**11. Narcotics § 4— marijuana in out-building — possession**

The State's evidence was sufficient to support a reasonable inference that defendant exercised custody, control and dominion over 82.2 grams of marijuana found in a pig shed located approximately twenty yards directly behind defendant's residence, where it tended to show that defendant had been seen on numerous occasions in and around the out-buildings directly behind his house, and that marijuana seeds were found in defendant's bedroom. G.S. 90-88.

**12. Narcotics § 4— growing marijuana in cornfield**

The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of feloniously growing marijuana where it tended to show that (1) marijuana seeds were found in defendant's bedroom, (2) 82.2 grams of marijuana were found in a pig pen located 20 yards directly behind defendant's residence, (3) an unintersected path began at the edge of the pig pen and extended a distance of about 55 yards to a cornfield where marijuana was found growing, and (4) the wire fencing at the beginning of the path was lower than the remainder of the path.

APPEAL by defendant from decision of the North Carolina Court of Appeals (13 N.C. App. 112), affirming *Rouse, J.,* at 1 May 1971 Session of BEAUFORT Superior Court.

Defendant was charged in separate bills of indictment with feloniously growing marijuana and with feloniously possessing marijuana in a quantity in excess of one gram.

The State offered evidence which tended to show that defendant lived in a combination residence and store in rural Beaufort County. Officers, armed with a search warrant, searched the residence-store and a pig pen located approximately twenty-five yards directly behind defendant's home. The officers found a jar containing marijuana seeds in defendant's bedroom, and found a box containing in excess of eighty-two (82) grams of marijuana leaves in a shed in the pig pen.

Beginning at the fence near the eastern corner of the same pig pen, a path some three or four feet wide ran approximately fifty to fifty-five yards to the edge of a cornfield. The wire fencing at the beginning of the path was lower than the remainder of the fence. The total distance by way of the path from defendant's residence to the cornfield was approximately seventy-five yards. No paths intersected or adjoined the path leading from the pig pen to the cornfield. The officers found approximately 115 marijuana plants growing in the corn rows.

Defendant offered no evidence. The jury returned verdicts of guilty as charged on both counts. The trial judge imposed concurrent sentences of two years on each count. Defendant appealed to the North Carolina Court of Appeals. The appeal is before this Court pursuant to G.S. 7A-30(1).

*Attorney General Morgan and Assistant Attorney General Magner for the State.*

*Wilkinson, Vosburgh & Thompson by John A. Wilkinson, for defendant.*

BRANCH, Justice.

Upon the call of his case for trial, and before pleading, defendant through counsel moved to quash the bills of indictment on the ground that his constitutional right to a speedy trial had been violated.

We note at the outset that the motion should have been to dismiss rather than to quash; however, the trial judge apparently treated the motion as a motion to dismiss and we therefore choose to consider the question of speedy trial.

The trial judge considered the records of the case, statements of defense counsel and statements of the solicitor for the State, and, after making full findings of fact, concluded (1) that the length of delay was not unreasonable, (2) that the delay was for good cause and not because of neglect or wilfullness of the prosecution, (3) that the delay was not prejudicial to defendant in preparing and presenting his defense, and (4) that failure to try defendant at the January 1971 Session of Beaufort County Superior Court was acquiesced in by defendant's counsel. Upon these findings of fact and conclusions of law the court denied defendant's motions to quash the bills of indictment.

Defendant did not except to any findings of fact or conclusions of law upon which the denial of the motions to quash was based. In any event, the record discloses that there was ample evidence to support the findings of fact, and that these findings in turn supported the conclusions of law.

[1-5]   The constitutional right to a speedy trial protects an accused from extended imprisonment before trial, from public suspicion generated by an untried accusation, and from loss of witnesses and other means of proving his innocence resulting from passage of time. Whether defendant has been denied the right to a speedy trial is a matter to be determined by the trial judge in light of the circumstances of each case. The accused has the burden of showing that the delay was due to the State's wilfulness or neglect. Unavoidable delays and delays caused or requested by defendant do not violate his right to a speedy trial. Further, a defendant may waive his right to a speedy trial by failing to demand or to make some effort to obtain a speedier trial. *State v. Ball*, 277 N.C. 714, 178 S.E. 2d 377; *State v. Hollars*, 266 N.C. 45, 145 S.E. 2d 309; *State v. Lowry* and *State v. Mallory*, 263 N.C. 536, 139 S.E. 2d 870. The constitutional right to a speedy trial prohibits arbitrary and oppressive delays by the prosecution. *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274. But this right is necessarily relative and is consistent with delays under certain circumstances. *Beavers v. Haubert*, 198 U.S. 77, 49 L.ed. 950, 25 S.Ct. 573.

[6]   Approximately ten months elapsed between the time of defendant's arrest and the time of his trial. He complains that events taking place during the delay, rather than the actual

length of the delay, prejudiced him. He argues that widespread publicity resulting from drug investigations in Beaufort County during this delay, and the trial of three other drug cases in the same session at which he was tried, created the actual prejudice.

In this connection we take judicial notice that the drug problem had been known and widely publicized in every corner of the state long before defendant was arrested. In any event, we can only speculate as to the effect of the Beaufort County investigations and trials upon the minds of prospective jurors.

Defendant was represented by experienced and competent counsel and was in position to demand a speedy trial. He failed to do so. On the contrary, at one term of court his case was called and he failed to answer. At another term of court his counsel acquiesced in a continuance. Defendant fails to show that the delay of approximately ten months resulted in any prolonged imprisonment, created public suspicion against him, or deprived him of any means of proving his innocence. In fact, a careful examination of this record fails to reveal any evidence of purposeful and oppressive delay on the part of the State.

The trial judge correctly overruled defendant's motions to quash the indictments.

[7] Defendant next contends that the trial judge erred in denying his motion to suppress all the evidence resulting from the search of his premises. He argues that the affidavit for the search warrant fails to comply with G.S. 15-26(b) and with the constitutional requirement of probable cause guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

G.S. 15-26(b) provides: "An affidavit signed under oath or affirmation by the affiant or affiants and indicating the basis for the finding of probable cause must be a part of or attached to the warrant."

The portion of the affidavit pertinent to the question of probable cause recites:

The facts which establish probable cause for the issuance of a search warrant are as follows:

Information received by affiant on 7-3-70 from a reliable informant, one which has given information in the past and lead to convictions and arrest, that James Spencer c/m who resides at R-2, Box 42, Pantego, N. C., as described above has marahauna plants growing approximately 75 yards from his residents and marahauna seeds within his residents. On 7-9-70 and 7-14-70 affiant found the marajauna plants growing in the location given by informant. On 7-13-70 information received from informant that subject James Spencer is to leave on 7-15-70 on trip with a quantity of marahauna which will be transported in his personal car, a 1964 Chrysler, N. C. Lic. LF602. Surveillance by affiant on 7-14-70 indicated large amount of traffic at residence.

THOMAS WILLIAM CADDY
Affiant.

Sworn to on July 15, 1970.

The principles of law applicable to this contention are stated in the case of *State v. Spillars,* 280 N.C. 341, 185 S.E. 2d 881 as follows:

A valid search warrant may be issued on the basis of an affidavit containing information which may not be competent as evidence. *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755. The affidavit may be based on hearsay information if the magistrate is informed of underlying circumstances upon which the informant bases his conclusion as to the whereabouts of the articles and the underlying circumstances upon which the officer concluded that the informant was credible. *Jones v. U. S.,* 362 U.S. 257, 4 L.Ed. 2d 697, 80 S.Ct. 725. Probable cause deals with probabilities which are factual and practical considerations of everyday life upon which reasonable and prudent men may act, *Brinegar v. U. S.,* 388 U.S. 160, 93 L.Ed. 1879, 69 S.Ct. 1302, and if the facts before the magistrate supply "reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense will reveal the presence upon the described premises of the objects sought and that they will aid in the apprehension or conviction of the offender," it is sufficient basis for the issuance of the search warrant. *State v. Vestal, supra.* The magistrate's deter-

State v. Spencer

mination of probable cause should be paid great deference by the reviewing court. *Jones v. U. S., supra.*

Here, the affiant concluded that the informant was credible because he had given information in the past which led to arrests and convictions. The affiant confirmed the information as to growing marijuana by personal observation. Further, the affiant, by personal surveillance, observed large amounts of traffic to and from defendant's residence. These facts supplied reasonable cause to believe that search of the described premises would reveal the presence of marijuana.

[8] Defendant also contends that the search warrant is invalid on the theory that the affidavit shows on its face that affiant had engaged in illegal search and seizure because he illegally visited the field where the marijuana was growing prior to the issuance of the search warrant under attack.

Answer to this attack on the validity of the search warrant is found in *State v. Harrison,* 239 N.C. 659, 80 S.E. 2d 481:

"It seems to be generally held that the constitutional guaranties of freedom from unreasonable search and seizure, applicable to one's home, refer to his dwelling and other buildings within the curtilage but do not apply to open fields, orchards, or other lands not an immediate part of the dwelling site. Machen, The Law of Search and Seizure, page 95 (citing *Hester v. United States,* 265 U.S. 57, 44 Sup. Ct. 445, 68 L.Ed. 898); Cornelius, Search and Seizure, Second Edition, page 49; 48 C.J.S., Intoxicating Liquors, section 394, page 630, *et seq.;* 30 Am. Jur., Intoxicating Liquors, section 528, page 529; Anno. 74 A.L.R. 1454, where numerous cases on this point are collected, among them being: *Simmons v. Commonwealth,* 210 Ky. 33, 275 S.W. 369; *S. v. Cobb,* 309 Mo. 89, 273 S.W. 736; *Penney v. State,* 35 Okla. Crim. Rep. 151, 249 P. 167; *Sheffield v. State,* 118 Tex. Crim. Rep. 329, 37 S.W. 2d 1038; *Field v. State,* 108 Tex. Crim. Rep. 112, 299 S.W. 258."

We hold that this affidavit complied with the provisions of G.S. 15-26 and clearly met the constitutional standard of reasonableness and probable cause requisite to issuance of a search warrant.

Defendant challenged the sufficiency of the evidence to carry both charges to the jury by moving for a directed verdict of not guilty.

In *State v. Glover,* 270 N.C. 319, 154 S.E. 2d 305, it is stated:

"Defendant moved for a directed verdict of not guilty. This motion challenges the sufficiency of the evidence to go to the jury. *S. v. Wiley,* 242 N.C. 114, 86 S.E. 2d 913. ' . . . (T)he objection that the evidence is not sufficient to carry the case to the jury . . . must be raised during the trial by a motion for a compulsory nonsuit under the statute now embodied in G.S. 15-173, or by a prayer for instruction to the jury.' *S. v. Gaston,* 236 N.C. 499, 73 S.E. 2d 311. . . . "

Prior to 1 January 1972, Article 5 of Chapter 90 of the General Statutes provided, in part:

§ 90-87. Definitions (of narcotic drugs).

(1) "Cannabis" includes the following substances under whatever means they may be designated:

a. The dried flowering or fruiting tops of the pistillate plant cannabis sativa L. from which the resin has not been extracted;

. . . .

d. Marihuana.

. . . .

§ 90-88. Manufacture, sale, etc., of narcotic drugs regulated.—It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this article.

. . . .

§ 90-111.1. Growing of narcotic plant known as marijuana or opium poppy by unlicensed persons.—A person who without being licensed to do so under the federal narcotic laws, grows the narcotic plant known as marijuana or opium poppy or knowingly allows it to grow on his land without destroying

the same shall be guilty of a felony and shall be punished according to the provisions of this article.

. . . .

§ 90-111. Penalties for violation. (a) Any person violating any provision of this article or any person who conspires, aids, abets, or procures others to do such acts, shall upon conviction be punished, for the first offense, by a fine of not more than one thousand dollars ($1,000.00) or be imprisoned in the penitentiary for not more than five years, or both, in the discretion of the court: Provided, that any person unlawfully possessing . . . one gram or less of the drug marijuana defined in G.S. 90-87(1)d, shall, for the first offense, be guilty of a misdemeanor and punished by fine or imprisonment, or both, in the discretion of the court. . . .

We first examine the facts of this case concerning the charge of felonious possession of marijuana.

Defendant stipulated that the vegetable matter found within the pig shed was marijuana and that the vegetable matter weighed 82.2 grams. Thus, if the marijuana was in defendant's actual or constructive possession, the trial judge correctly denied defendant's motion directed to the charge of felonious possession.

[9] Constructive possession of contraband material is that which exists without actual personal dominion over the material, but with an intent and capability to maintain control and dominion over it. *State v. Allen*, 279 N.C. 406, 183 S.E. 2d 680; *Rodella v. United States*, 286 F. 2d 306 (9th Cir., 1960); *State v. Meyers*, 190 N.C. 239, 129 S.E. 600.

[10] One of the well recognized rules concerning sufficiency of evidence to withstand motion for nonsuit or motion for a directed verdict is that when the motion questions the sufficient of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431.

[11] In instant case the pig shed where the marijuana was found was located approximately twenty yards from and directly behind defendant's residence. Defendant had been seen on numerous occasions in and around the out-buildings directly

State v. Spencer

behind his house. Thus, when considered with the fact that marijuana seeds were found in defendant's bedroom, this evidence raises a reasonable inference that defendant exercised custody, control, and dominion over the pig shed and its contents. As stated by the Court in *Hunt v. State*, 158 Tex. Crim. 618, 258 S.W. 2d 320, defendant has been placed in "such close juxtaposition to the narcotic drug as to justify the jury in concluding that the same was in his possession."

[12] The trial judge also correctly allowed the jury to consider the charge on feloniously growing marijuana plants in violation of G.S. 90-111.1. Again, considering the facts above recited and these additional facts: (1) that a path about three or four feet wide began at the edge of the pig pen, where the 82.2 grams of marijuana were found; (2) that the wire fencing at the beginning of the path was lower than the remainder of the fence; (3) that the path extended a distance of about 55 yards to the cornfield where the marijuana was found growing; and (4) that the path leading from the pig pen to the growing marijuana was not adjoined by or intersected by other paths, a reasonable inference arises that defendant was feloniously growing marijuana.

The trial judge correctly overruled defendant's motion for a directed verdict.

The Controlled Substances Act, effective 1 January 1972, Article 5, Chapter 90 of the General Statutes, does not affect the prosecution in this case. *State v. Harvey, ante* p. 1.

The decision of the Court of Appeals finding no error is

Affirmed.